416 A.2d 1079

**COMMONWEALTH of Pennsylvania**

v.

**Edmund STORER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1979.

Filed Dec. 21, 1979.

Robert A. Kosseff, Wilmington, Del., for appellant.

Sandra L. Gross, Assistant District Attorney, Media, for Commonwealth, appellee.

Before CERCONE, President Judge, and ROBERTS and LIPEZ, JJ.*

ROBERTS, Judge:

On January 17, 1978, a jury convicted appellant of voluntary manslaughter, simple and aggravated assault, recklessly endangering another person and endangering the welfare of a child. After denying post-verdict motions, the trial court sentenced appellant to consecutive terms of imprisonment of 5 to 10 years for voluntary manslaughter and 1 to 2 years for aggravated assault. Represented by new counsel, appellant contends that (1) trial counsel was ineffective; (2) the trial court improperly allowed admission of inflammatory photographs; and (3) the prosecutor engaged in prejudicial misconduct. We affirm.

Appellant was charged with beating to death a 7 year old girl whom he and his wife were planning to adopt. The girl, Amy Luck, suffered from Down's Syndrome, from which she was mentally retarded and had a valve defect in her heart. On July 29, 1977, a neighbor discovered Amy in appellant's home in a coma and badly injured. Only appellant was also in the house. The neighbor called police, who took Amy to a hospital. Two weeks later, Amy died from her injuries.

At trial, the Commonwealth presented a number of physicians who had examined Amy at the time of her admission to the hospital and one who had treated her about 2 weeks earlier. The physicians who saw Amy on July 29 described how she had been covered with bruises too numerous to count and other injuries. Each physician asked for an opinion of the cause of death stated that he believed that Amy had been beaten. Trial counsel cross-examined the physicians and attempted to compel them to withdraw their opinions on the cause of death. Each maintained, however, that the severity, extent and nature of the bruises and wounds could not have been caused by an accident or any means other than a beating.

* Justice Samuel J. Roberts of the Supreme Court of Pennsylvania, is sitting by designation.

44

The Commonwealth also presented a witness who testified that he had heard appellant say that Amy deserved to die. The Commonwealth established that the witness was convicted of a criminal charge, had a criminal record and that his probation officer had offered to write a letter to the judge responsible for the witness' sentence, recommending probation. The witness asserted, however, that he had not been promised any concession in return for his testimony and had testified because he felt a moral obligation to do so.

 Appellant argues that trial counsel was ineffective because he did not present a medical witness to rebut the testimony of the physicians offered by the Commonwealth.[1] Appellant does not allege that a physician could have come to any other conclusion than that reached by the Commonwealth's witnesses or that he has located a physician willing to testify that the cause of death was other than by beating. Apparently, the medical evidence permitted only one conclusion. Counsel cannot be held ineffective for failing to find a witness who would dispute a conclusion with which no responsible physician would disagree. See generally *Commonwealth v. Roach*, 479 Pa. 528, 388 A.2d 1056 (1978).

 Appellant argues that trial counsel was ineffective by cross-examining the Commonwealth's witnesses in such a way as to strengthen the Commonwealth's case. Counsel strenuously attempted to elicit from the Commonwealth's witnesses an admission that the injuries might have resulted from an accidental fall down a flight of stairs. The witnesses emphatically denied this possibility. It is difficult to see what other line of questioning trial counsel could have pursued in attempting to blunt the force of the Commonwealth's medical evidence. The only explanation appellant offered for the injuries was such a fall. At every opportunity, counsel searched, without success, for a crack in the wall of medical evidence contradicting appellant's only line of

---

1. Because appellant is represented by counsel other than trial counsel, he may raise ineffectiveness of trial counsel. See, e. g., *Commonwealth v. Gardner*, 480 Pa. 7, 389 A.2d 58 (1978).

defense. For this strategy, counsel cannot be faulted. See generally *Commonwealth v. Ramsey*, 259 Pa.Super. 240, 393 A.2d 806 (1978). Moreover, it ill becomes appellant in one breath to charge trial counsel with ineffective assistance for failing to present a medical witness to rebut the Commonwealth's medical testimony and, in the next, assail counsel for disputing that testimony too vigorously.

■ Appellant argues that trial counsel was ineffective because, on cross-examination of the physicians testifying for the Commonwealth, he did not attempt to establish that the bruises on Amy might be the result of a defective blood platelet count often found in young children suffering from Down's Syndrome and similar disorders. At the time of trial, medical research had shown that children with defective blood platelet counts bleed more freely than other children. Dr. Allen J. Weissburg testified, however, that a blood test performed upon Amy's arrival at the hospital revealed that her blood lacked any abnormalities that might cause excessive bleeding. Further, Dr. Horace Agerty, who examined Amy about two weeks before the incident, testified that, at that time, she had no unusual bruises or signs of excessive bleeding. Appellant has not alleged that, contrary to this testimony, Amy had a defective blood platelet count or ever suffered from excessive bleeding, or that medical research has determined that children with defective blood platelet counts could, through an accident, sustain bruises of the severity of those found on Amy. In short, no basis existed for counsel to raise this question in his cross-examination. Accordingly, he was not ineffective for failing to do so.

Appellant contends that trial counsel was ineffective in managing appellant's own direct examination. According to appellant, counsel's lack of preparation caused his testimony to be incoherent. In his trial testimony, appellant frequently digressed from the questions trial counsel propounded, rambled and offered opinion and commentary. Time and

again, counsel interrupted to bring appellant back to the issues at hand. Despite appellant's conduct, trial counsel managed to elicit from him his version of the incident. Indeed, appellant does not allege that counsel neglected to establish any point in his favor or that the jury could not understand his testimony.

Appellant asserts that proof of counsel's incompetence lies in the request of the court that counsel "direct the witness with questioning." The record refutes this contention. After appellant had concluded a monologue, the prosecutor encouraged appellant to "Go on . . . keep telling your story." The trial court, however, apparently decided that trial counsel, not the prosecutor, should perform appellant's direct examination and told counsel "it would be helpful if you would direct the witness with questioning." Nothing in the court's comment implies that counsel was ineffective. Counsel was not ineffective in examining appellant.

Appellant also asserts that trial counsel was ineffective for failing to impeach the witness who testified for the Commonwealth that he heard appellant say that Amy deserved to die. Appellant argues that counsel should have emphasized that the witness had been convicted of crime, was serving a prison sentence and his probation officer had offered a letter of recommendation if the witness would testify. The prosecutor, on direct examination, established all these facts. It would have been pointless for counsel to duplicate the interrogation of the prosecutor. Counsel was not ineffective for refusing to undertake a pointless task. See *Commonwealth v. Roach*, supra.

Appellant next asserts that the trial court erred in allowing admission of twelve color photographs of Amy's injuries. The trial court admitted the photographs to aid the jury in understanding the testimony of the physicians

and so they could determine whether the injuries were caused by beating or by an accident. The court fully warned the jury of the limited purpose of the photographs and that it should not let the pictures arouse their passions. We find no error in the trial court's decision.[2] See *Commonwealth v. Smalls*, 449 Pa. 15, 295 A.2d 298 (1972).

■ Finally, appellant argues that the prosecutor engaged in prejudicial misconduct. While examining one of the physicians, the prosecutor picked up a paddle, struck one hand with it and asked the witness if the paddle could have caused Amy's injuries. The witness said that it could. The prosecutor then turned to appellant and asked, "Is that what you did?" Defense counsel immediately objected. After a short recess, the trial court, without referring specifically to the prosecutor's comment, warned the jurors not to consider any displays of emotion. In its post-verdict opinion, the trial court stated that it had not heard the comment and did not know whether the jury had heard it. Further, on cross-examination, the prosecutor, without objection, asked appellant similar questions even more pointed. Thus, it is questionable that the jurors even heard the comment and, if they did, it was both countered by the court's cautionary instruction and of no effect in view of the cross-examination appellant underwent. See generally *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978) (harm of improper evidence dispelled by cautionary instructions and if cumulative of properly admitted evidence).

Judgments of sentence affirmed.

2. Appellant notes that the jury viewed the 12 pictures for only 7 minutes and calculates that each juror could have viewed each picture for only 2.5 seconds. He concludes that this time was too short to allow serious study of the photographs but long enough to cause prejudice. Appellant's conclusions are nothing more than speculation. Moreover, his calculations may be incorrect. It is possible that some jurors did not look at every photograph or that groups of jurors looked at each photograph. If so, the time each juror spent looking at each photograph viewed would be considerably longer than appellant has assumed.